```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                          SOUTHERN DIVISION

 3
     UNITED STATES OF AMERICA,
 4
                         Plaintiff,
 5   vs.                                 Case No. 18-20128
                                         Hon. Stephen J. Murphy, III
 6   D-4 MICHAL FIGURA,

 7                       Defendant.
     _____/
 8
                              SENTENCING
 9
            BEFORE THE HONORABLE STEPHEN J. MURPHY, III
10               United States District Judge
            Theodore Levin United States Courthouse
11               231 West Lafayette Boulevard
                  Detroit, Michigan  48226
12               Wednesday, December 5, 2018

13   APPEARANCES:

14   For the Plaintiff        APRIL NICOLE RUSSO
     United States of America: KEVIN MULCAHY
15                            U.S. Attorney's Office
                              211 W. Fort Street
16                            Suite 2001
                              Detroit, Michigan  48226
17                            313-226-9129

18   For the Defendant        WILLIAM W. SWOR
     D-4 Michal Figura:       615 Griswold Street
19                            Suite 1120
                              Detroit, Michigan  48226
20                            313-967-0200

21

22

23
           To obtain a certified copy of this transcript, contact:
24        Linda M. Cavanagh, CSR-0131, RDR, RMR, CRR, CRC
                      Official Court Reporter
25            (313) 234-2616 • www.transcriptorders.com
```

| | |
|---|---|
| 1 | TABLE OF CONTENTS |
| 2 | Page |
| 3 | SENTENCING: |

Allocution by Mr. Swor...............................10
Allocution by Defendant Michal Figura...............16
Allocution by Ms. Russo.............................16
Comments by the Court...............................22
Sentence of the Court...............................23

EXHIBITS

| Identification | Offered | Received |
|---|---|---|
| NONE | | |

```
 1              Detroit, Michigan
 2              Wednesday, December 5, 2018
 3                      —  —  —
 4              (Proceedings commenced at 4:19 p.m., all parties
 5              present)
 6              THE CLERK:  Court calls Case No. 18-20128, United
 7      States of America versus Michal Figura.
 8              Counsel, state your appearances for the record.
 9              THE COURT:  Okay.
10              MR. SWOR:  William Swor on behalf of Mr. Figura this
11      morning, this afternoon, Your Honor.
12              THE COURT:  Good afternoon.
13              MS. RUSSO:  And good afternoon, Your Honor.  April
14      Russo and Kevin Mulcahy on behalf of the United States.
15              THE COURT:  Okay.  Everybody may be seated.
16              MR. SWOR:  Your Honor?
17              THE COURT:  Yes.
18              MR. SWOR:  If -- if I may.
19              THE COURT:  Yes.
20              MR. SWOR:  Yesterday I filed a pleading styled
21      supplemental sentencing memorandum.
22              THE COURT:  Yes.
23              MR. SWOR:  It's on the ECF as Document 147.
24              THE COURT:  I have it right here.
25              MR. SWOR:  It was aggressive, to say the least.  This
```

1   morning I read an e-mail from AUSA Russo responding to the

2   assertions in my pleading, disputing them and stating her point

3   of view.

4        Since this morning I have discussed the matter with

5   my client, have reviewed my own documents and records, and I am

6   no longer confident that the document that I filed is

7   appropriate or accurately reflects the state of this case.

8        We are -- the issues, at least some of the issues,

9   are still in dispute, but I think given the standard of an

10  appropriate pleading in this Court, that the document is no --

11  is not appropriate.

12       I would ask the Court to -- I'm going to file a

13  written request, but I would ask the Court to allow me to

14  withdraw the document, to strike it from the record, and I

15  would apologize to AUSA April Russo for the statements made

16  therein.

17       THE COURT:  Okay.  I don't have any personal problem

18  with withdrawal of Document No. 147 ECF.  That's Michal

19  Figura's Supplemental Sentencing Memorandum.  If you agree, Ms.

20  Russo, we can do that by stipulation and I'll just order it

21  stricken.

22       MS. RUSSO:  Yes, Your Honor.  And I want to thank --

23  thank Mr. Swor for his careful attention to the matter.

24       THE COURT:  Okay.  All right.  Thank you both for

25  your agreement.  I don't really know, I haven't delved deeply

1    into what's here and what's not here, but I will say that 147's

2    stricken by agreement, and Mr. Parker will tell you, 'cuz he

3    knows these things much better than I do, whether we need a

4    written stipulation to address that matter.  But either on our

5    own or pursuant to a stipulation you write, we will strike that

6    and I won't consider it further.

7          MR. SWOR:  I think you can do it by a Text-Only

8    Order, but...

9          THE COURT:  Yeah.

10         MR. SWOR:  It happens to me too many times.

11         THE COURT:  All right.  Very good.  Mr. Figura, has

12   and Mr. Swor read and discussed the Pre-Sentence Report,

13   including any revisions that may have been made to it after it

14   first came to you?

15         DEFENDANT FIGURA:  Yes, Your Honor.

16         THE COURT:  Okay.  All right.  Very good.  There are

17   objections and I think we can dispense with some of them.

18         Defense counsel denies that Mr. Figura was aware of

19   the point system or polls.  He had nothing to do with it and

20   was unaware of the levels.  The government says Figura was

21   aware of the polls and participated in them.  Probation says,

22   "I don't know what to do.  We'll refer this to the Court."

23         I'm not going to decide this unless you want to have

24   an evidentiary hearing.  It does not affect the overall offense

25   level.  I did not, as I reviewed the file, consider it in

1    preliminarily evaluating Mr. Figura's culpability.  I -- I know

2    it existed and I've seen the evidence of it as well as the

3    discussion of it with other defendants, but I'm not going to

4    grant or deny Objection No. 1 because it doesn't -- it doesn't

5    go to the offense level and it can't be resolved absent a

6    lengthy evidentiary hearing.  Any --

7            MR. SWOR:  Your Honor, as to all of the objections --

8            THE COURT:  Yeah.

9            MR. SWOR:  -- I believe none of them affect the

10   guideline offense level.

11           THE COURT:  Okay.

12           MR. SWOR:  Probation has addressed them in the report

13   and -- and accounted for them in the report.

14           THE COURT:  Okay.

15           MR. SWOR:  And I think we're satisfied with the

16   Pre-Sentence Report as amended or addended [sic].

17           THE COURT:  Excellent.

18           MR. SWOR:  And I don't think we need to address --

19           THE COURT:  All right.

20           MR. SWOR:  -- those.

21           THE COURT:  Then -- then I will say the following and

22   let you react.  The Objections 1 through 11 I believe have just

23   been summarized by Mr. Swor.  They are not the sort of

24   objections that I could resolve quickly or readily, but without

25   resolving them and noting their making, the Pre-Sentence Report

1   has been adjusted accordingly.  The objections and responses

2   will go to the Bureau of Prisons, and I think Mr. Swor's legal

3   positions on all of them are protected.  Given the fact that

4   they do not affect the sentence guideline range in the case, I

5   will simply acknowledge them and neither deny nor affirm them

6   but say that there's a dispute and that the Probation

7   Department referred them to me with their analysis.

8           Anything else on that, Mr. Swor?

9           MR. SWOR:  No, sir.

10          THE COURT:  Ms. Russo?

11          MS. RUSSO:  Your Honor, I do actually think in the

12  objections there's a challenge to both the vulnerable victim

13  and the under 12 enhancement.  If Your Honor were to find that

14  both of those enhancements were not applicable, it would impact

15  the guideline range.  I believe in the Rule 11 Mr. Figura

16  stipulated to the vulnerable victim enhancement but did not

17  stipulate to the under 12 enhancement.

18          THE COURT:  All right.  First of all, I would say my

19  ruling that I just made and Mr. Swor agreed to would address

20  this situation simply because whether I gave the enhancement or

21  not, he's going to be at a lifetime sentence.

22          With regard to the first one, which I believe dealt

23  with vulnerable victims, I will credit the case file and the

24  probation officer's response which indicates that, taking

25  everything into account, the vulnerable victim adjustment

1       applies, but Probation did add two sentences to the end of the

2       paragraph to reflect Figura's position.

3               Secondly, with regard to the vulnerable victim or at

4       least the victim under the age of 12, I need not repeat myself.

5       Everything I just said still lies.  And Probation again added

6       two sentences in that paragraph to reflect Mr. Figura's

7       statements.

8               So I consider the Probation Office's report to be

9       correct -- correctly written.  I'll amend my earlier statement

10      to say that I will deny the legal objections on the basis of

11      what's written in the report and what I said earlier in

12      response I believe to Mr. Kriger.  But whatever the case may

13      be, we're going to be starting this from a Level 43, Criminal

14      History Category I, life sentence recommended by the

15      guidelines.  Satisfactory to all the lawyers?

16              MS. RUSSO:  Yes, Your Honor.

17              MR. SWOR:  Yes, Your Honor.

18              THE COURT:  Okay.  All right.  Thank you both very

19      much.  And that is how we will address the objections in the

20      case.

21              As I mentioned, the Offense Level is 43, the Criminal

22      History Category is I, the advisory guideline range is life in

23      prison.

24              The factual findings of Ms. Danysh in her report will

25      be those of the Court for purposes of this sentencing hearing

1    only.

2            And I'll ask both lawyers, Ms. Russo and Mr. Swor,

3    whether or not they have any additional additions, corrections

4    or misstatements in the Pre-Sentence Report that we haven't

5    discussed.  Mr. Swor?

6            MR. SWOR:  No, sir.

7            THE COURT:  Ms. Russo?

8            MS. RUSSO:  No, Your Honor.

9            THE COURT:  All right.  Thank you both very much.

10           Then we're ready to go to sentencing on the case, and

11   I appreciate your hard work not only in the case overall but on

12   the objections and their resolution as well.

13           The victims have spoken at length.  We had an hour of

14   testimony along with some statements read by the U.S. Attorney

15   this morning, and we also have a Victim Impact Statement that's

16   been provided to me and all the defendants that the Court

17   thoroughly reviewed.

18           Restitution amount is how much, Ms. Russo?

19           MS. RUSSO:  Your Honor, it is 105,000.

20           THE COURT:  $5,000 per victim by agreement with Mr.

21   Swor results in a $105,000 restitution amount in this case.  If

22   either counsel wants to debate that in allocution, they can.

23           The Court will not impose a fine.  Mr. Figura does

24   not have the financial capability to pay one and it would be

25   superfluous in terms of the special assessment, the restitution

1    and the $5,000 Justice Trafficking Act enhancement that I have

2    to by law imposed -- impose.

3           Forfeiture is not an issue in this case and there

4    will be no final issue of forfeiture.

5           And I would now look to Mr. William Swor on behalf of

6    his client, Michal Figura, as to any remarks he'd like to make

7    in addition to the sentencing memorandum, Document No. 137,

8    that was filed on November 29.  I also had Mr. -- excuse me,

9    Dr. Sugrue's report and a number of other supporting items, and

10   I've read everything relevant to Mr. Figura and are happy to

11   hear about your continuing argument for a variance in the

12   sentence for this defendant.  Go right ahead, Mr. Swor.

13          MR. SWOR:  Your Honor, the Court has seen in both the

14   Pre-Sentence Report and Dr. Sugrue's report the personal

15   history of Mr. Figura and the -- the trauma that it brought to

16   his life, the chaos that he has lived with for his entire life.

17          Having said that, from the letters the Court can see

18   that he has earned the support and love of his family and his

19   community.  His mother has traveled here from New Jersey to be

20   with her son.  This is difficult because her English is not all

21   that great, and I'm certain that she has struggled to

22   understand everything that has gone on here.

23          Going back to the personal history and -- and the

24   trauma that came with it, Mr. Figura overcame that history and

25   put himself through school, working as a busboy, various jobs,

Sentencing • Wednesday, December 5, 2018

1    obtained not only degrees but advanced degrees.

2          He has worked since his early years and he hasn't

3    amassed a great deal of wealth, but he has given back to the

4    community in the ways that he could, and the Court can see from

5    the letters that he has invested himself into the community and

6    has been proactive about it.  Not only has he helped out where

7    needed but he looked for ways to help.  He wants to be a good

8    person.  That's why he tries to help.  It is the puzzle that

9    still remains reflecting on his participation in this

10   enterprise.

11         And I would submit to the Court that notwithstanding

12   the characterizations by the government, that this was more of

13   a -- passive is not the right word, but it was certainly, I

14   think I've said before, reactive, escapism involvement.  The

15   government has indicated that this group was by invitation

16   only.  I -- I -- the government knows that better than I do.

17         And the government indicates that Mr. Figura was in

18   the room several times a week, but it's clear that his

19   participation was not at the level of any of the other

20   defendants so far.  He did not initiate, with one extreme

21   exception.  He did not initiate any contact with the victims.

22   It is clear that he had no one-on-one contacts with the victim.

23   We say he did not record.  The government concedes only that

24   they have no proof that he recorded.

25         And he fully disclosed, and this is a point of

1    contention and part of the dispute that remains between the

2    government and myself.  We -- we know from Dr. Sugrue's report

3    that Dr. Sugrue even noted some minimization by Mr. Figura, and

4    the government bases its argument about deception on

5    minimization.  I suspect that given the man we know him to be,

6    that he was pretty overwhelmed and embarrassed.

7            I will tell the Court that Mr. Figura did task me

8    with reaching out to the government to see if they were

9    satisfied, if they wanted to talk with him further, if they had

10   any specific questions, and there were no subsequent meetings,

11   and that -- obviously that could be a couple of different

12   things.  One, it could be that they didn't feel it was worth

13   it, and two, it could be that they were satisfied.  I'm -- I'm

14   not -- I don't speak for the government, I only speak for Mr.

15   Figura.

16           The fact that he minimized or may have minimized his

17   involvement, his behavior, whatever you would call it, however,

18   was not significant enough that Dr. Sugrue suggested that it

19   interfered with his ability to conduct a full evaluation.  I

20   would point out that information that Mr. Figura gave to Dr.

21   Sugrue was information that the government used in its

22   sentencing memorandum to make its argument.  I would point out

23   that he gave Dr. Sugrue information that the government used in

24   making its sentencing memorandum.

25           I would also suggest that the testing that Dr. Sugrue

```
 1    used, there's no suggestion that the testing was impaired or
 2    skewed or anything else by this historical minimization because
 3    the testing is -- is not -- it doesn't disclose what are
 4    important questions are to the -- to the testing -- the
 5    individual being tested.  The -- the questions appear to be
 6    random, they're not focused.  They -- they certainly don't
 7    trumpet their purpose.
 8            Dr. Sugrue's finding is that likelihood of recidivism
 9    is low.  Dr. Sugrue identified addiction, identified disorders,
10    identified the need for therapy, and Mr. Figura acknowledges
11    his -- his need for therapy.  He has told -- consistently told
12    us since day one when he was still in Philadelphia, locked up
13    there, that he tried to get help, he -- but he was made aware
14    of the fact that any healthcare professional that he confided
15    in would have to report him and report the conversation to the
16    authorities, and -- and Mr. Ortega gave us very brave words
17    about doing that.  But I think that the -- the cataclysmic
18    consequences of such an action are certainly a rational
19    deterrent.  And now, as Dr. Sugrue noted and as Mr. Figura has
20    agreed, that now there's nothing to stop him from getting the
21    treatment and the therapy that he needs.
22            THE COURT:  Yeah.
23            MR. SWOR:  Mr. Figura has always admitted that this
24    was wrong, that this was not normal.  Fortunately, Dr. Sugrue
25    says that the testing reveals no evidence of pedophilia.
```

1    The remaining issue with regard to that is the

2    government's comment that Mr. -- Mr. Figrue [sic] -- Figura has

3    no empathy for his victims, and we disagree with that most

4    fervently.  I believe that Dr. Sugrue's report makes it clear

5    that the statements attributed by the government were only part

6    of the statement and it was a historical rationalization, and

7    that Mr. -- Mr. Figura clearly understands that that

8    rationalization is wrong.  He is culpable, responsible.  He

9    accepts that.  There is no excuse for it.  There's no

10   minimization of it, objectively or otherwise.

11   He's not going to see his children grow up except

12   from a distance.  Someone called that the -- the ironic

13   punishment, I think it was Mr. Kriger, that his children's

14   childhood will be taken away from him as this group robbed

15   others of theirs.

16   Your Honor, I believe that no matter what, the facts

17   do not warrant a sentence for Mr. Figura above the mandatory

18   minimum.  I would ask you to impose a sentence at the mandatory

19   minimum of 240 months.

20   I -- I have some comments about the financial

21   responsibility program.  Do you want them now or --

22   THE COURT:  Sure.

23   MR. SWOR:  -- later?

24   THE COURT:  Mm-hmm.  Go ahead.

25   MR. SWOR:  I -- I -- I'd ask the Court not to impose

1     the federal -- the Inmate Financial Responsibility Program upon

2     him.  The Court has already made a finding that he doesn't have

3     resources.  And one of the problems of the Inmate Financial

4     Responsibility Program is that it does not simply take a

5     portion of his earnings and set it aside.

6            THE COURT:  Right.

7            MR. SWOR:  But they take his commissary, they take a

8     significant portion of his commissary, they take a significant

9     portion of -- of anything that his family might send him, and

10     things in prison are expensive and it's going to be hard

11     getting along even as it is.

12            THE COURT:  Okay.

13            MR. SWOR:  And -- and so I -- I'd ask the Court to

14     allow it to be paid after he's discharged from custody.

15            THE COURT:  Okay.

16            MR. SWOR:  Also for the benefit of his family, his

17     wife and children, we would ask the Court to consider

18     designating him in the following order or recommend

19     designation: FCI Fairton, F-a-r -- F-a-i-r-t-o-n, FCI Otisville

20     and FCI Allentown.  Failing that, we would ask the Court to

21     designate him to an institution that has the intensive program

22     such as McKean.

23            THE COURT:  Okay.  All right.  Great.  McKean is in

24     Pennsylvania.

25            MR. SWOR:  McKean is in western Pennsylvania.  It's

1    about five hours from Philadelphia.

2              THE COURT:  Okay.  All right.  All right.  Very good.

3    Thank you very much, Mr. Swor, for those compelling and well

4    thought remarks.

5              I now would like to turn to the client, Mr. Figura,

6    and say to you, sir, you have the opportunity to speak to the

7    Court on your own behalf and to say anything in addition or in

8    concert with what your lawyer said, and you go right ahead.

9              DEFENDANT FIGURA:  Thank you, Your Honor.

10             In addition to my letter to the Court, I just would

11   like to make this short statement.  What I did was wrong and

12   reprehensible.  I take full responsibility for my actions.  The

13   fact that I have an addiction is not -- is an explanation but

14   not an excuse.  As I sit here and listen to the victims'

15   statements, I am even more ashamed and -- and more embarrassed.

16   I'm sorry.

17             THE COURT:  Okay.  Thank you very much, sir.  I

18   appreciate those sincere remarks.

19             On behalf of the United States.

20             MS. RUSSO:  Thank you, Your Honor.

21             Your Honor, I'll incorporate the arguments in the

22   government's sentencing memorandum, and -- and you've

23   incorporated already the Victim Impact Statements in this

24   matter.

25             When it comes to Mr. Figura, Your Honor, I think his

1    story and the recommendation here were -- are a little bit more

2    of a complicated story.  And the government did end up

3    recommending 35 years for Mr. Figura which is at the bottom of

4    the sentencing recommendations.  And the reason for that, Your

5    Honor, were the mitigating factors for Mr. Figura: that he --

6    that he wasn't a hunter, that he was only a talker.  That even

7    when he was a talker, he wasn't active in every single

8    conversation through the duration of the time that he was on

9    Website A and these other websites.

10          And, Your Honor, we don't have any evidence that he

11   recorded, defense is absolutely right about that.

12          On the other hand though, Your Honor, for Mr. Figura

13   the government had concerns that didn't exist necessarily for

14   some of the other offenders.  There's things about Mr. Figura

15   that stood out, one being, Your Honor, that Mr. Figura engaged

16   in this sort of activity, collecting child pornography at

17   least, since his adolescence, longer than any other offender

18   here that we've sentenced so far, Your Honor, and that we will

19   sentence tomorrow as far as the government knows.

20          And, Your Honor, the defendant engaged in this

21   activity for hours every -- five days a week by his own

22   admission.  And according to him, he couldn't fall asleep

23   without engaging in masturbation, Your Honor.  But in addition

24   to that he said that at some point looking at adult pornography

25   became insufficient to get him to the level of arousal such

1    that he could engage in masturbation so that the only way he

2    could fall asleep then was to engage in this activity by

3    viewing child pornography.

4            So when we look at the level of Mr. Figura's

5    addiction, Your Honor, I don't know that there's another

6    defendant that we are sentencing in this case that has -- can

7    even compare in terms of the level of addiction to this sort of

8    content.

9            Of course, Your Honor, he also did have child

10   pornography of toddlers.  He was in this group from the very

11   beginning, from 2012.  He visited certain chatrooms on Website

12   A that are very concerning, like "blackmailcapper" and

13   "cryingandfun."  And he had 6,122 visits to Website A from the

14   time that we first obtained logs from this website, and through

15   the month before his arrest he was still frequenting Website A,

16   Your Honor, and frequenting rooms associated with minor

17   victims.  And so when it comes to that conduct, Your Honor,

18   it's very concerning to the government.

19           And that's why we ended up, although we think that

20   conduct is concerning enough to warrant a higher sentence, when

21   we look at the mitigation, when we look at the fact that he

22   wasn't a hunter, he didn't serve in multiple roles in the group

23   and he didn't record, we end up at 35 years.

24           Now, I don't want to minimize the things that he did

25   say to these girls because although he wasn't always as active

1    of a participant in the chats as some of the other offenders,

2    when he was active he was extremely graphic.  He was just as

3    graphic as any of the other ones.  He told girls to take off

4    their clothes, he asked them how many fingers they were going

5    to use to engage in sexual activity, and he asked them to

6    obtain other objects to engage in the activity other than their

7    fingers.  And those are just some examples, Your Honor.

8         And so then when it comes to the history and

9    characteristics of the offender, we look at Dr. Sugrue's

10   report, and I believe his report is very helpful.  The defense

11   says Dr. Sugrue said that he was a low risk of recidivism.

12   I -- I disagree slightly with that because on the VRTs, Dr.

13   Sugrue found that he was a medium risk for recidivism.

14        And on the other test that Dr. Sugrue performed, I

15   believe he performed a Static-99R and a Stable-2007, and one of

16   those, the Static-99R, which is the only predictor of

17   recidivism other than the VRT that he used, he found him to be

18   a low to moderate risk.

19        The other thing that was interesting about Dr.

20   Sugrue's report and that I've been puzzling over since I saw it

21   is that when he did the PCL-R test, the Hare Psychopathy test,

22   on page 13 of his report for Mr. Figura he talks about this,

23   and he says that when he compared Mr. Figura's score to other

24   offenders, he was -- to other sex offenders, he was 99 -- oh,

25   to other criminals, he was 99 percent -- 99 percent showed a

1    stronger sign of psychopathy than Mr. Figura. But then he

2    says, "On the other hand, when compared to a sample of

3    non-criminal, non-psychiatric undergrads, his score placed him

4    at the 34th percentile."

5          And what was interesting about this to me, Your

6    Honor, is that when I looked at the other evaluations that Dr.

7    Sugrue has done of the other defendants in this case, Mr.

8    Simpatico and Mr. Rodriguez being the other two, Mr. Simpatico,

9    his score, when compared to these non-criminal, non-psychiatric

10    undergrads placed him in the 81th percentile and Rodriguez's

11    was 75 percent, Your Honor. So that would be an indicator that

12    Mr. Figura scores dramatically different from these other two

13    offenders that are in this group and dramatically different

14    in -- in not a positive way. But I don't really understand

15    the -- the -- the analysis here because of the first --

16          THE COURT: You're -- you're -- you're -- you're

17    delving too deeply.

18          MS. RUSSO: Yes, Your Honor.

19          THE COURT: Okay. Get -- get to the point please.

20          MS. RUSSO: Yes, Your Honor. My -- my point was only

21    that that's concerning that there's this dramatic difference

22    between this offender and the other offenders, and I didn't

23    know if perhaps that is because this offender's addiction is so

24    much more pervasive than the other -- some of the other

25    offenders in this case, given that --

Sentencing • Wednesday, December 5, 2018

21

```
1        THE COURT:  Well, we're not punishing him for
2   addiction, right?  You've gone on for like ten minutes about
3   recidivism, right?  I mean it's likely he's going to recidivate
4   for the next 30 years.  So why don't we talk about whether or
5   not 30, 35, 40 or 45 years is appropriate.  You said 35 is and
6   I respect that.
7        MS. RUSSO:  Yes, Your Honor.  We think 35 years is
8   necessary to protect the public given all the facts that I just
9   stated.
10       THE COURT:  All right.  Anything else?
11       MS. RUSSO:  No, Your Honor.
12       THE COURT:  Okay.  All right.
13       MR. SWOR:  Briefly, Your Honor.
14       THE COURT:  What?  What -- what could you possibly
15  say?
16       MR. SWOR:  Okay.  Pages 13 and 14, same report, the
17  last sentence: "Mr. Figura does not display evidence of
18  psychopathy nor a high risk for future dangerous criminal
19  behavior."
20       THE COURT:  All right.
21       MR. SWOR:  Page 17, "As reported earlier, when
22  considering stable and statistic -- static and stable factors,
23  Mr. Figura falls in the low range."
24       THE COURT:  All right.
25       MR. SWOR:  All right.  Your Honor, I think the
```

1    mandatory minimum is sufficient and we urge the Court.

2         THE COURT:  Okay.  I appreciate it very much from

3    both sides.

4         I think that any individual who suffers a 20-, 30- or

5    35-year sentence who goes back and does the same things again

6    after that amount of time and the consequences of this type of

7    conviction would be irrational.  Maybe Mr. Figura is, maybe

8    he's not, but we'll give him a good long term of supervised

9    release to assess where he's at after the prison term punishes

10   and hopefully deters his behavior.

11        All right.  No criminal convictions.  Solid

12   educational background.  Strong support from the family,

13   especially the mother.  The household was chaotic.  Dad was

14   absent.  Corporal punishment made it very tough for this man

15   and his brother.  His mother remarried.  He came from Poland

16   and had a tough time, not that we would expect people to get

17   involved in criminal activity of this nature.  Addictive

18   behavior or other serious conduct of that sort.  We see this

19   time and time again.

20        The sad fact of the matter is what Mr. Figura did not

21   get as a child led him into a secretive and incredibly

22   destructive habit of criminality that destroyed his victims in

23   many cases, will certainly destroy his family, and shockingly

24   takes him away from a marriage with a woman who seems to still

25   be supportive of him, two children, Master of Science in

1    computers and steady employment.

2          I agree with Ms. Russo that some of the conduct here

3    takes him out of the heartland of the most culpable.  He

4    appeared to have been a, quote, "talker," close quote, which

5    means that he was not hunting, looping or coercing young girls

6    to join these groups.

7          He did not, from everything I was able to read,

8    record his victims.  And Mr. Swor makes a compelling case that

9    I believe of him being in and out of the group probably because

10   guilt, disgust and he knew what he was doing, but Dr. Sugrue

11   says himself he kept going back to it.

12         How do you sentence such a man?  Well, I believe a

13   custodial sentence is warranted to punish the behavior, to

14   address the severe psychological consequences that were visited

15   in society by the effect we've seen on the victims, and to

16   hopefully deter this man from doing it again or other people

17   from picking up the computer keyboard and getting involved in

18   such things.

19         I believe the circumstances of the offense, the

20   statutory custodial minimum, the rehabilitation opportunities,

21   that he, along with Mr. Sinta who I spoke about earlier, should

22   suggest a -- a sentence around but slightly in excess of

23   360 months.

24         Therefore, pursuant to the Sentence Reform Act of

25   1984, the Court, having considered the sentence guidelines and

1    factors contained in 18 USC, Section 3553(a), hereby commits

2    the defendant Michal Figura to the custody of the U.S. Bureau

3    of Prisons for a term of 315, that's 3-1-5, months.

4          It's further -- no, I'm sorry, that's a mistake.

5    375 months.  I will commit Michal Figura to the custody of the

6    U.S. Bureau of Prisons for a term of 375 months.  That is

7    31 years and a quarter.

8          It's further recommended that the defendant be

9    designated to an institution with a comprehensive sexual

10   offender treatment program primarily.  If that's available at

11   McKean, I think that would be the best place.  Alternatively,

12   Fairton and Otisville would accommodate him and keep him close

13   to his wife and children who I believe he ought to have contact

14   with.

15         Upon release from imprisonment, the defendant shall

16   be placed on a supervised release term of five years.

17         The defendant must pay a special assessment of a

18   hundred dollars.  That will be due immediately.

19         And he must pay the Justice for Victims of

20   Trafficking Fund an assessment of $5,000 due immediately as

21   well.

22         Restitution in the amount of $5,000 per identified

23   victim, or $105,000, will be ordered.

24         No interest, penalties and fees may accrue on any of

25   these financial penalties.

1    No fine, no costs of incarceration, the costs of

2   supervision are all waived due to the defendant's lack of

3   financial resources.

4    I appreciate your request, Mr. Swor, but having

5   deliberated on it and in all candor, I must tell you that I

6   think the Inmate Financial Responsibility Program in a case

7   where there is financial obligations is very important.  I did

8   not know until today and I understand now from your comments

9   that it can be harsh in some semblance.  All I can say is that

10  Mr. Figura should -- should act accordingly to alleviate the

11  harshness of the program, but I think paying some money toward

12  the special assessments and restitution amounts is very, very

13  important while in custody.

14    Therefore, he shall participate in the Inmate

15  Financial Responsibility Program.  I'm aware of its

16  requirements, as I just mentioned, and I approve the payment

17  schedules of the program and will hereby order the defendant's

18  compliance.

19    Mandatory drug testing is suspended based on the

20  Court's determination that the defendant poses a low risk of

21  future substance abuse.

22    While on supervision, Mr. Figura must abide by the

23  standard conditions adopted by the Court, and he has to comply

24  with all 15 of the special conditions verbatim laid out and

25  read into the record by the Court in the initial sentencing

 1   hearing today five and a half hours ago with Mr. -- with Mr.

 2   Maire.

 3          That will be the sentence of the Court.  Are there

 4   objections to it you'd like to lodge, Ms. Russo?

 5          MS. RUSSO:  No, Your Honor.

 6          THE COURT:  Mr. Swor?

 7          MR. SWOR:  Your Honor, would the Court consider

 8   suspending the Inmate Financial Responsibility once the special

 9   assessments are paid?

10          THE COURT:  What --

11          MS. RUSSO:  Your Honor, I would object to anything

12   like that.  You heard the victims.  You heard that they can't

13   afford to pay their therapy bills and they have therapy dogs

14   they have to pay for every month.

15          THE COURT:  I -- I -- I -- I won't do that now but

16   I'm very open minded, and if a legal brief and a discussion of

17   the program along with the inability or -- or -- or -- or lack

18   of fairness in complying with it under the law, along with a

19   full payment, would support discharge from it, I'd be open --

20   open to amending the judgment.

21          I wonder if that isn't -- I wonder if that isn't part

22   of the Bureau of Prisons' oversight of an inmate, but I would

23   certainly never foreclose or preclude a post-judgment motion

24   seeking relief from the program if circumstances and law

25   justify it, okay?

Sentencing • Wednesday, December 5, 2018

1    Any other objections or anything else you'd like to

2  say, Mr. Swor?

3    MR. SWOR:  No, sir.

4    THE COURT:  All right.  Thank you very much.  The

5  sentence that I just stated will be imposed.

6    The defendant has waived the right to appeal his

7  sentence and his conviction as part of his Plea Agreement.

8  Those waivers, Mr. Figura, are usually enforceable.  If you

9  believe yours is not, you can present that to the U.S. Court of

10 Appeals.

11    The defendant will be remanded to the custody of the

12 marshal for continued service of his sentence.

13    Both parties have copies of the Pre-Sentence Report.

14 Amended copies will be sent to the Bureau of Prisons and the

15 Sentencing Commission.

16    That is it from here.  Anything else from the United

17 States?

18    MS. RUSSO:  Your Honor, we'll dismiss the remaining

19 counts in the indictment at this time.

20    THE COURT:  Okay.  Upon motion and without objection,

21 I will sign a Judgment and Commitment Order dismissing the

22 remainder of the indictment counts against Mr. Figura.  There's

23 no objection to that obviously.

24    And we will now be in recess until 9:00 a.m. tomorrow

25 morning when we will hear from Mr. Walton and Mr. Young and

1   close out sentencing in this case, all right?  Thank you all

2   very much --

3           MR. SWOR:  Thank you, Your Honor.

4           THE COURT:  -- and have a pleasant evening.

5           THE CLERK:  All rise.  Court is now in recess.

6           (Court in recess at 5:06 p.m.)

7                           —  —  —

```
 1                  C E R T I F I C A T I O N

 2          I, Linda M. Cavanagh, Official Court Reporter of the

 3   United States District Court, Eastern District of Michigan,

 4   appointed pursuant to the provisions of Title 28, United States

 5   Code, Section 753, do hereby certify that the foregoing pages 1

 6   through 28 comprise a full, true and correct transcript of the

 7   proceedings held in the matter of United States of America vs.

 8   D-4 Michal Figura, Case No. 18-20128, on Wednesday, December 5,

 9   2018.

10

11

12                       s/Linda M. Cavanagh
                         Linda M. Cavanagh, RDR, RMR, CRR, CRC
13                       Federal Official Court Reporter
                         United States District Court
14                       Eastern District of Michigan

15

16

17   Date: March 5, 2020
     Detroit, Michigan
18

19

20

21

22

23

24

25
```